IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| GRADY A. LEE, SR., | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
|    v. | ) CIVIL ACTION: 2:14-CV-1073-MHT-SRW |
| | ) |
| OFFICER KYLE ADAMS, | ) |
| | ) |
|    Defendant. | ) |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.  INTRODUCTION**

Plaintiff Grady Lee, Sr., initiated this civil complaint in the Circuit Court for Covington County, Alabama, on September 19, 2014. On October 21, 2014, defendants River Falls Police Department and Officer Kyle Adams removed the case to federal court by filing a Notice of Removal under 28 U.S.C. § 1441(b).[1] Doc. 1. When this action was removed, Lee was an inmate incarcerated at the Ventress Correctional Facility.[2] He complains that on April 17, 2013, Adams subjected him to a warrantless arrest and failed to read him his *Miranda*[3] rights. Lee requests damages, his release from imprisonment, and termination of Adams' employment with the police department.

---

[1] In accordance with the prior proceedings, orders, and opinions entered in this case, the River Falls Police Department was dismissed as a defendant. *See* Docs. 6, 8.

[2] Since filing this complaint, Lee has been released from custody.

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

Adams filed a special report and supporting evidentiary materials addressing Lee's claims for relief. Doc. 13. Upon receipt of Adams' special report, the court issued an order directing Lee to file a response, including sworn affidavits and other evidentiary materials, and specifically cautioning Lee that "the court may at any time thereafter and without notice to the parties (1) treat the special report and any supporting evidentiary materials as a motion for summary judgment." Doc. 15 at 2. Lee responded to Adams' report, *see* Doc. 16, but his response does not demonstrate that there is any genuine issue of material fact. The court will treat Adams' special report as a motion for summary judgment. It concludes that this motion is due to be resolved in favor of defendant Adams.

## II. STANDARD OF REVIEW

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law." *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute]

2

of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing the non-moving party has failed to present evidence to support some element on which it bears the ultimate burden of proof. *Id*. at 322−324.

Defendant Adams has met his evidentiary burden. Thus, the burden shifts to Lee to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593−594 (11th Cir. 1995) (holding that, once the moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or sworn statements], or by depositions, answers to interrogatories, and admissions on file," demonstrate there is a genuine dispute of material fact) (internal quotations omitted). This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014). A genuine dispute of material fact exists when the non-moving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Public Educ.*, 495 F.3d 1306, 1313 (11th Cir. 2007).

Although factual inferences must be viewed in a light most favorable to the non-moving party and *pro se* complaints are entitled to liberal interpretation by the courts, a

*pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *See Beard v. Banks*, 548 U.S. 521, 525 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Lee's *pro se* status alone does not compel this court to disregard elementary principles of production and proof in a civil case.

### III. DISCUSSION

**A. Official Immunity**

Lee does not specify the capacity in which he brings suit against Adams. If Lee lodges his § 1983 claims against Adams in his official capacity, the claims are actually against the City of River Falls. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office" that is "no different from a suit against the State itself."); *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (Suits against officers in their official capacities are, "in all respects other than name … treated as a suit against the entity"); *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) ("Because suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a need to bring official-capacity actions against local government officials, because local government units can be sued directly[.]").

To the extent that Lee seeks to impose liability on the City of River Falls for the allegedly unconstitutional acts of an employee, his claim fails. In *Monell v. Department of*

4

*Social Services of New York*, 436 U.S. 658, 694 (1978), the Supreme Court expressly rejected municipal liability based on *respondeat superior*. "[A] municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id*. at 691 (emphasis in original); *Canton v. Harris*, 489 U.S. 378, 385 (1989) (*citing Monell*, 436 U.S. at 694–95) ("[A] municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue. *Respondeat superior* or vicarious liability will not attach under § 1983." (emphasis in original)). Rather, to state a claim under § 1983 against the City, Lee must allege that he suffered a constitutional injury, and that his injury was caused by "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell*, 436 U.S. at 690. Here, Lee does not allege that any policy, practice or custom of the City of River Falls violated his civil rights – nor, as explained above, can the City be liable under § 1983 simply because it employs a tortfeasor. *Monell*, 436 U.S. at 694. Defendant Adams is, therefore, entitled to summary judgment for claims brought against him in his official capacity.

**B. The Request for Release**

Lee seeks release from custody as part of his requested relief in this § 1983 action. Lee is no longer in custody and, thus, the request is moot. Even if Lee were still incarcerated, a § 1983 complaint is not an appropriate remedy for obtaining this type of relief. Where a prisoner is challenging the very fact or duration of his physical

5

imprisonment, and the relief sought is a determination he is entitled to immediate release or a speedier release from that imprisonment, the inmate's federal remedy is by way of a writ of habeas corpus. *See Preiser v. Rodriquez*, 411 U.S. 475, 500 (1973) (habeas corpus is the exclusive remedy for prisoners attacking the validity of their conviction or confinement).

C. **The *Miranda* Claim**

Lee alleges that when Adams arrested him on April 17, 2013, the officer failed to read him his *Miranda* rights. This claim does not give rise to a cognizable claim under § 1983.

> [A]n allegation that officers failed to follow *Miranda* procedures is insufficient to "assert[ ] a violation of a constitutional right in order to state a cause of action under § 1983." *Jones v. Cannon*, 174 F.3d 1271, 1291 (11th Cir. 1999) (internal quotation marks omitted). In *Jones*, we explained that the right to counsel during custodial interrogations recognized in *Miranda* was "merely a procedural safeguard, and not a substantive right." *Id*. (internal quotation marks omitted). Under this precedent, we must conclude that [the plaintiff] failed to state a claim under § 1983 because his allegation that the officers failed to follow *Miranda* procedures was insufficient to assert that the officers violated his substantive constitutional rights.

*Parris v. Taft*, 630 F. App'x. 895, 901 (11th Cir. 2015). Because Lee fails to state a claim that his constitutional rights were violated based on a failure to follow *Miranda* procedures, Adams is due to be granted summary judgment on this claim.

**D. The Fourth Amendment Claim**

Lee alleges that Adams arrested him without a warrant on April 17, 2013, and never served a warrant on him thereafter. In his opposition to Adams' dispositive motion, Lee

6

reiterates his allegation that Adams arrested him without a warrant and never served a warrant on him, and claims that Adams used Lee's criminal record to cover up his mistake and to make Lee "look bad." Docs. 1, 16.

The following facts are undisputed in this case. Adams began working as a full-time deputy with the Covington County Sheriff's Office in October 2009. In January 2013, Adams was employed as a police officer with the Town of River Falls, Alabama. Between January 2013 and June 2014, Adams worked for both the Covington County Sheriff's Department and the Town of River Falls ["River Falls"]. On April 15, 2013, while working in his capacity as a sheriff's deputy, Adams responded to a reported disturbance in a mobile home park in River Falls. During his investigation of the disturbance, Adams encountered Lee, with whom he was familiar from his past experience as a law enforcement officer. Lee's daughter-in-law, Monica Hall, who was also present at the scene, mentioned to Adams that Lee had been living in her trailer on Herring Lane at the mobile home park for several months. Docs. 13-1, 13-21. Tiarra Rhodes (Lee's granddaughter) also told Adams that Lee was living in Hall's trailer. Doc. 13-1.

Adams states in his declaration that he knew of Lee's status as a sex offender through Adam's previous employment at the Covington County Jail. Lee's sex offender status requires him to keep an accurate registration of his current address on file with the Covington County Sheriff's Office. Believing that Lee's residence with his daughter-in-law did not match Lee's address of record with the Covington County Sheriff's Office,

7

Adams informed the River Falls Chief of Police of the situation on April 16, 2013. On April 17, 2013, the police chief instructed Adams to follow up concerning Lee's registration status. Adams contacted the Covington County Sheriff's Office to confirm Lee's registered address. He spoke with Deputy Wesley Snodgrass, who confirmed that Lee was a convicted sex offender and provided Adams with the last registered address for Lee, which was on Casey Lee Road, not on Herring Lane. Adams then returned to the mobile home park and spoke to the manager of the facility. The manager confirmed that Lee had been living at the mobile home park on Herring Lane. Adams then spoke to Timothy Berry, another resident at the mobile home park, who informed the officer that after the April 15, 2013, disturbance, Lee began staying in Berry's trailer. In response to Adams' questioning concerning Lee's location, Berry stated that Lee was presently in his trailer asleep on the couch. Doc. 13-21; Doc. 13-2.

Adams requested and received Berry's consent to enter his trailer, where he observed Lee asleep on the couch. According to Adams, he asked Lee to step outside and apprised Lee of his *Miranda* rights. When Adams asked Lee if he wanted to talk about living in the trailer park, Lee stated to the officer, "I ain't talking to you about nothing." Adams arrested Lee for failing to register his current address in violation of Ala. Code § 15-20A-10(b).[4] While booking Lee into the jail, Adams also noticed that Lee had defaced

---

[4] Ala. Code § 15-20A-10(b) provides:

Immediately upon establishing a new residence, accepting employment, accepting a volunteer position, or beginning school attendance, the adult sex offender shall appear in person to register with local law

8

his driver's license by covering the words "criminal sex offender" with paper in violation of Ala. Code § 15-20A-18(e).[5] Docs. 13-4, 13-5, 13-8–13-12, 13-21. He arrested Lee for the additional offense at that time. Doc. 13-1.

On April 19, 2013, Adams presented probable cause affidavits and criminal complaints to support arrest warrants to a Covington County Magistrate. The Magistrate found probable cause and issued warrants for Lee's arrest for failure to register his address and alteration of his driver's license. Docs. 13-1, 13-6, 13-7, 13-13, 13-14, 13-21.

1. <u>Warrantless arrests for failure to register as a sex offender and alteration of driver's license</u>

"An arrest without a warrant and lacking probable cause violates the Constitution and can underpin a § 1983 claim, but the existence of probable cause at the time of arrest is an

---

enforcement in each county in which the adult sex offender establishes a residence, accepts employment, accepts a volunteer position, or begins school attendance.

Any person who knowingly violates § 15-20A-10 shall be guilty of a Class C felony. Ala. Code § 15-2-A-10(j).

[5] Ala. Code § 15-20A-18(e) provides:

(e) No adult sex offender shall mutilate, mar, change, reproduce, alter, deface, disfigure, or otherwise change the form of any driver license or identification card which is issued to the adult sex offender by the Alabama State Law Enforcement Agency and which bears any designation enabling law enforcement officers to identify the licensee as a sex offender. An adult sex offender having in his or her possession a driver license or identification card issued to him or her by the Alabama State Law Enforcement Agency bearing any designation enabling law enforcement officers to identify the licensee as a sex offender which has been mutilated, marred, changed, reproduced, altered, defaced, disfigured, or otherwise changed shall be prima facie evidence that he or she has violated this section.

Any person who knowingly violates § 15-20A-18 shall be guilty of a Class C felony. Ala Code § 15-20A-18(f).

9

absolute bar to a later constitutional challenge to the arrest. Probable cause exists where the facts within the collective knowledge of law enforcement officials, derived from reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that a criminal offense has been or is being committed." *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 734 (11th Cir. 2010) (citations and footnote omitted). Probable cause is present when an arrest is "objectively reasonable based on the totality of the circumstances. This standard is met when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense... . Although probable cause requires more than suspicion, it does not require convincing proof ... and need not reach the [same] standard of conclusiveness and probability as the facts necessary to support a conviction." *Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002) (internal quotation marks and citations omitted); *see also State v. Montgomery*, 968 So. 2d 543, 548 (Ala. Crim. App. 2006) ("Probable cause to support a warrantless arrest must exist at the time of the arrest. … Probable cause exists if facts and circumstances known to the arresting officer are sufficient to warrant a person of reasonable caution to believe that the suspect has committed a crime.") (citations and internal quotation marks omitted); Ala. R. Crim. P. 4.1(a)(1) ("A law enforcement officer may arrest a person without a warrant if: (i) The law enforcement officer has probable cause to believe that a felony has been committed, or is

10

being committed, and that the person to be arrested committed it, or (ii) Any offense has been committed in the law enforcement officer's presence or view … ."). "[P]robable cause is a flexible, common-sense standard.... [I]t does not demand any showing that [the officer's belief that an offense has been or is being committed] [is] correct or more likely true than false." *Texas v. Brown*, 460 U.S. 730, 742 (1983).

In addition, even if an officer lacks actual probable cause to make an arrest, he or she is entitled to qualified immunity if there was arguable probable cause for the arrest. *Jones v. Cannon*, 174 F.3d 1271, 1283 (11th Cir. 1999). Arguable probable cause exists if a reasonable police officer, knowing what the defendant knew, could have believed there was probable cause for the arrest. *Id*.

In this case, the undisputed facts demonstrate that on April 17, 2013, Adams had probable cause to arrest Lee at the mobile home park in River Falls. On that day, Adams had received confirmation from the Covington County Sheriff's Office of Lee's registered address. Adams also received confirmation prior to and on April 17, 2013, from witnesses who either worked or resided at the mobile home park that Lee had been living there for several months. The location of the mobile home park did not match the address Lee had registered at the Covington County Sheriff's Office. Thus, at the time Adams found Lee at the mobile home park on April 17, 2013, he had probable cause to arrest Lee for failing to register his current address. Because probable cause existed when Adams arrested Lee, the warrantless arrest did not violate Lee's constitutional rights.

Further, even if Adams lacked actual probable cause to arrest Lee on April 17, 2003, he is entitled to qualified immunity if there was arguable probable cause for the arrest. *Jones*, 174 F.3d at 1283 (11th Cir. 1999). As noted above, arguable probable cause exists if a reasonable police officer, knowing what the defendant knew, would have believed there was probable cause for the arrest. *Id*. Thus, "[e]ven law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." *Holmes v. Kucynda*, 321 F.3d 1069, 1079 (11th Cir. 2003) (internal quotations and citation omitted). On this record, Adams had at least arguable probable cause to arrest Lee for failing, as a convicted sex offender, to register his current address.

2. <u>Arrest warrants for failure to register address and alteration of driver's license.</u>

After Adams arrested Lee on April 17, 2013, without a warrant, he presented affidavits and criminal complaints to support arrest warrants to a Covington County Magistrate on April 19, 2013. The Magistrate found probable cause, and issued warrants charging Lee with failure to register his address and alteration of his driver's license. Docs. 13-1, 13-6, 13-7, 13-13, 13-14, 13-21. Lee complains that he was never served a copy of any warrant, in violation of his constitutional rights. Doc. 1-2.

The arrest warrants issued by the Magistrate for both the registration and license alteration violations are dated April 19, 2013, but the "execution" portions of these warrants – which appear to have been signed by Adams, and which indicate that he "[e]xecuted the within warrant[s] by arresting the defendant and placing defendant in the

12

Covington County Jail" – are dated two days before, on April 17, 2013, the day of the warrantless arrest. Docs. 13-13 (Ex. K) at 5; 13-14 (Ex. L) at 5. There is no information in the affidavits or report provided by defendants concerning the service of these warrants. Taking the facts in the light most favorable to the plaintiff – who contends that on April 17, 2013, "Officer Ryan Adams never served me with a warrant at all," and that Adams "never came back from the time that I was arrest and in jail April 17th, 2013[] until I left going to prison July 12, 2013," Doc. 1-2 at 2, 4 – the court assumes for purposes of the summary judgment motion that the April 19 warrants were never physically served on plaintiff, but instead may have been deemed by Adams to have been constructively executed via the original warrantless arrest on April 17.

While there may have been some irregularity in Adams' alleged failure to serve these warrants despite his notation that they were "executed," the court does not find a constitutional violation here. By state statute, Adams would have been required to show the warrants to the plaintiff "as soon as possible" if Adams had arrested plaintiff pursuant to the April 19 warrants, and plaintiff had asked to see them. *See* Ala. Code § 15-10-3(a)(6) (providing that an officer may arrest a person without a warrant "[w]hen the officer has actual knowledge that a warrant for the person's arrest for the commission of a felony or misdemeanor has been issued … . However, upon request the officer shall show the warrant to the arrested person as soon as possible. If the officer does not have the warrant in his or her possession at the time of arrest the officer shall inform the defendant of the offense

13

charged and of the fact that a warrant has been issued."); *see also Hester v. State*, 444 So. 2d 1, 2 (Ala. Crim. App. 1983) ("The language of Section 15-10-2, Code of Alabama 1975, tends to negate the existence of a requirement that an arrest warrant be served upon an arrestee. Under that statute, an arresting officer must show an arrest warrant to the person being arrested if that person so requires."). Federal law grants a similar right to an arrestee to be shown an existing arrest warrant upon request. *See United States v. Bembry*, 321 F. App'x 892, 894 (11th Cir. 2009) ("There is no federal requirement that an officer have a warrant in hand or nearby when he is arresting a suspect. Instead, when an officer is arresting a suspect, pursuant to a warrant, and 'the officer does not possess the warrant, the officer must inform the defendant of the warrant's existence and of the offense charged and, at the defendant's request, must show the warrant to the defendant as soon as possible.' Fed.R.Crim.P. 4(c)(3)(A)."). In this case, however, Adams could not have had actual knowledge of the April 19 arrest warrants, nor could he actually have arrested plaintiff pursuant to those warrants, when he took plaintiff into custody two days before the warrants were signed, on April 17. In addition, plaintiff does not allege that he ever requested a copy of the April 19 warrants from Adams. Thus, no state or federal statute or rule was violated here.

Taking the facts as plaintiff alleges, the court concludes that the April 17 arrest complained of by plaintiff is correctly analyzed as a warrantless arrest – whether or not the allegedly unserved April 19 warrants were issued later – which was constitutionally

justified by probable cause, as discussed above. *See Bradley v. Extradition Corp. of Am.*, 758 F. Supp. 1153, 1156 (W.D. La. 1991) (determining that "[a]n arrestee need not be presented with a copy of the arrest warrant[,]" that "[o]fficers were empowered to arrest plaintiff even if no warrant existed, as long as they had probable cause to believe that he had committed the crimes for which they arrested him," and that "the fourth amendment right to be free from unreasonable seizures does not mandate disclosing the arrest warrant. It requires that the arresting officers have probable cause to arrest."). Again, the Fourth Amendment does not compel an officer to obtain an arrest warrant before the officer effects an arrest. "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). "[W]arrantless arrests for crimes committed in the presence of an arresting officer are reasonable under the Constitution, and … while States are free to regulate such arrests however they desire, state restrictions do not alter the Fourth Amendment's protections." *Virginia v. Moore*, __ U.S. __, 128 S. Ct. 1598, 1607 (2008) (upholding arrest for driving on suspended license).

In light of the foregoing, summary judgment is due to be granted in favor of Defendant Adams on all of Lee's claims.

### IV. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. Defendant's motion for summary judgment (Doc. 13) be GRANTED.

2. Judgment be GRANTED in favor of defendant.

3. This case be DISMISSED with prejudice.

It is further

ORDERED that **on or before February 15, 2018**, the parties may file an objection to the Recommendation. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made; frivolous, conclusive, or general objections will not be considered.

Failure to file a written objection to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

Done, on this the 1st day of February, 2018.

/s/ Susan Russ Walker_____
Susan Russ Walker
United States Magistrate Judge